KOLIN C. TANG (SBN 279834)
SHEPHERD, FINKELMAN, MILLER
 & SHAH, LLP
11755 Wilshire Blvd, 15th Floor
Los Angeles, CA 90025
Telephone: (323) 510-4060
Facsimile: (866) 300-7367
Email: ktang@sfmslaw.com

[Additional Counsel Listed on Signature Page]

*Attorneys for Plaintiff and the Proposed Class*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARLA CAMPBELL, TRISTIN HIBLER, and MICHAEL LEPPERT On Behalf Of Themselves And All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> KIA MOTORS AMERICA, INC. and KIA MOTORS MANUFACTURING GEORGIA, <br><br> Defendants. | CASE NO. <br><br> CLASS ACTION <br><br><br> JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiffs, Darla Campbell, Tristin Hibler, and Michael Leppert (collectively "Plaintiffs"), by and through their undersigned counsel, bring this action on behalf of themselves and all other persons similarly situated, against Kia Motors America, Inc. ("KMA"), and Kia Motors Manufacturing Georgia ("KMMG") (collectively referred to herein as "Kia" or "Defendants"), and, in support thereof, aver as follows upon information and belief, except as to allegations specifically pertaining to Plaintiffs, which are made upon knowledge:

## NATURE OF ACTION

1.     Plaintiffs bring this action individually, and on behalf of the proposed classes ("Classes") as more fully defined below, for the benefit and protection of

all current and former owners and lessees of model year 2012-2017 Kia Soul, Sorrento, Sedona, Sportage, Forte, Cadenza, Optima and Rio automobiles purchased or leased in California, Texas, or New Jersey (the "Class Vehicle(s)" or "Vehicle(s)").  As explained in more detail below, these Vehicles contain defective soy-based materials that are attractive to vermin (referred to herein as the "Soy-Based Materials Defect" or the "Defect"), which repeatedly chew through the soy-based materials, causing considerable damage and necessitating very expensive repairs.  The Vehicles are essentially identical for purposes of the class claims asserted herein as they all contain precisely the same Defect.

2.    Plaintiff Campbell's 2014 Kia Optima has been damaged once since she leased the Vehicle in early 2014 because of the Defect.  In December 2016, the Vehicle's wire harness and wiring was chewed and destroyed by vermin. Plaintiff Campbell sought warranty coverage from Kia for this Defect, but, after making her wait almost a month with the Kia Optima sitting at the dealership in North Hills, California, Defendant denied her claim for coverage.  Plaintiff Campbell paid approximately $300 to repair the wiring because the insurance company would not pay for replacement wiring.

3.    Plaintiff Hibler's 2017 Kia Sorrento has been damaged twice because of the Defect since she purchased the Vehicle in June of 2016 from a Kia dealership in Texas.  Each time rodents were attracted to and chewed the defective soy-based materials in her Vehicle.  The first incident occurred on or around January 14, 2017, when the Vehicle's engine harness was chewed.  This repair cost $2,409.18.  Plaintiff Hibler sought warranty coverage from Kia for this Defect, but Defendant denied her claim for coverage.  Plaintiff Hibler paid $995, and her auto insurer paid $1,414.18.  The second incident occurred on or around April 29, 2017, when the Vehicle's wire harness and washer fluid hose were chewed, necessitating $2,660.77 in repair expenses.  Once again, Plaintiff Hibler's request for warranty coverage was denied.  Plaintiff Hibler paid $1,241.49, and

her auto insurer paid $1,419.28.

4.     Plaintiff Leppert has leased two Kia vehicles, each of which has been damaged because of the Defect.  The first Vehicle, a 2013 Kia Soul, was chewed by a rodent in August 2014.  Kia refused to cover the expense related to the repair pursuant to the warranty, so Plaintiff Leppert paid $294.25.  In June 2017, Plaintiff Leppert's 2016 Kia Forte was chewed again by a rodent.  Kia refused to cover the repair under the Vehicle's warranty, so Plaintiff Leppert paid $128.25.

5.     Plaintiffs bring this class action on behalf of themselves and all other similarly situated persons to obtain injunctive relief, damages and restitution. Plaintiffs seek a definitive ruling from the Court on whether Kia's new vehicle warranty provides coverage for the defective soy-based parts. Plaintiffs also seek damages and restitution for harms previously suffered.

6.     Kia distributed, sold, leased, serviced, and warranted the Class Vehicles that are the subject of this action.  KMA, as set forth herein, also regularly and routinely provided feedback to Kia Motors Corporation ("KMC") and KMMG regarding the distribution, sale, lease, servicing, and warranting of the Class Vehicles, including issues plaguing the Class Vehicles such as the Defect that is the subject of this action.

7.     As set forth in detail below, the Class Vehicles all contain the same Defect, as the wiring and certain engine-related components are composed of soy-based materials, which attract animals that chew through the wires and engine-related components.  As a result, the Class Vehicles are repeatedly damaged, disabled, and rendered unsafe and in a condition such that they do not function properly.

8.     Tens of thousands of Class Vehicles containing the Defect have been sold or leased in California, Texas, and New Jersey.  Defendants knew, or should have known, that the Class Vehicles are defective, not fit for their intended purpose, and unsafe when they are driven within their normal and/or expected

range of operation because of the Defect.  Nevertheless, Defendants have actively concealed and failed to disclose the Defect, both prior to and after the time of purchase or lease.

9.     Further, when presented with an opportunity to repair a Vehicle, Kia denies the existence of the Defect, refuses to cover the necessary repairs under the Vehicle's new vehicle warranty, and merely removes the chewed soy-based materials and installs identically defective soy-based materials – while charging members of the Classes thousands of dollars for these "repairs."  By doing so, Kia has effectively transformed the Defect into a profit center.

10.     Defendants knew that owners and lessees of the Class Vehicles would reasonably expect that the wiring and engine components in the Class Vehicles at issue to operate in a predictable and expected manner during normal use, and Plaintiffs and other consumers did, in fact, have precisely that expectation.

11.     Since at least 2013, Defendants have known about the Soy-Based Materials Defect through internal research and industry knowledge, receipt of consumer complaints, communications with dealers and other sources, including parts manufacturers, and complaints filed by consumers with the National Highway Traffic Safety Administration ("NHTSA").  Despite their knowledge, Defendants have failed to disclose the existence of the Defect to consumers or to provide remedies that can reduce or eliminate this unsafe and economically burdensome problem.

12.     When a Class member presents a Vehicle for repair as a result of the Defect, Kia merely removes the gnawed materials and installs the same defective soy-based wiring and engine-related components, resulting in a continuous cycle of failures.  Because Kia refuses to cover the Soy-Based Materials Defect under its new vehicle warranty, Plaintiffs and the members of the Classes are forced to cover the financial cost of these expensive "repairs."

13.     The Defect renders the Class Vehicles unsafe and consumers have

been, and will continue to be, forced to deal with unsafe conditions resulting from the Defect such as inoperative air bags, compromised steering and braking performance, loss of electrical systems, and engine failure – each of which can render the Vehicle unsafe.

14.  When airbags or the anti-lock braking systems become compromised or inoperative as a result of the Defect, this creates a substantial safety concern. "From 1987 to 2012, there were an estimated 39,976 lives saved by frontal air bags."

www.nhtsa.gov/driving+safety/occupant+protection/advanced+frontal+air+bags

. "ABS prevents the vehicle from skidding out of control, and four-wheel ABS allows the driver to maintain the ability to steer around hazards in emergency braking situations." https://www.aaafoundation.org/faqs-anti-lock-braking-system-abs.

15.  Had Plaintiffs and other Class members known about the Defect at the time of purchase or lease, they would not have bought or leased the Class Vehicles, or would have paid less for them.

16.  As a result of the Defect and Kia's refusal to cover the Defect pursuant to the new vehicle warranty, Plaintiffs and members of the Classes have suffered injury in fact, incurred damages and have otherwise been harmed by Defendants' conduct.

17.  This action seeks class-wide declaratory relief ordering Kia to provide coverage for this Defect under its standard new vehicle warranty.  Plaintiffs also seek damages for themselves and all others who have paid out of pocket for these repairs and incurred other consequential damages as a result of Defendants' misconduct, including their conscious effort to conceal material facts concerning the Defect during the distribution, marketing, sale, advertisement, and servicing of the Vehicles.

18.  Plaintiffs and the Classes primarily seek a declaration pursuant to the

Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, that Kia's new vehicle warranty provides coverage for the defective soy-based parts.  However, Plaintiffs and the Classes also assert claims for breach of express warranty; violation of the Magnuson-Moss Act, 15 U.S.C. §§ 2301-2312; breach of implied warranty; violation of California's Consumer Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq.*; violation of California's Unfair Competition Law and Business and Professions Code §§ 17200, *et seq.* ("UCL" or "Section 17200"); violations of the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code §17.50, *et seq.*; and violations of the New Jersey Consumer Fraud Act.

## **PARTIES**

19.    Plaintiff Campbell ("Campbell") is, and at all times relevant to this action has been, a citizen of California.  In or about January 2014, Campbell leased a 2014 Kia Optima.

20.    Plaintiff Hibler ("Hibler") is, and at all times relevant to this action has been, a citizen of Texas.  In or about June 23, 2016, Hibler purchased a 2017 Kia Sorrento.

21.    Plaintiff Leppert ("Leppert") is, and at all time relevant to this action has been, a citizen of New Jersey.  In or about May 24, 2013, Plaintiff Leppert leased a 2013 Kia Soul.  In or about June 25, 2016, Plaintiff Leppert leased a 2016 Kia Forte.

22.    Defendant Kia Motors America, Inc. is a Delaware corporation with its headquarters in Irvine, California at 111 Peters Canyon Road Irvine, CA 92606, and therefore, is a citizen of California.  KMA is the distributer, marketer, seller, lessor and warrantor of the Class Vehicles.  KMA is a subsidiary of KMC, which oversees the overall design, manufacture, testing and assembly of the Vehicles.  KMA does substantial business in California, and California hosts a significant portion of KMA's U.S. operations, including sales and customer service offices, among others.

23. Defendant Kia Motors Manufacturing Georgia is a KMC manufacturing site located in West Point, Georgia. KMMG was responsible for the overall manufacture and assembly of the 2012-2017 model year Kia Sorrento and the 2012-2017 model year Kia Optima vehicles sold in the United States.

## JURISDICTION AND VENUE

24. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of interest and costs, and this is a class action in which certain of the class members and Kia are citizens of different states.

25. This Court has personal jurisdiction over Defendants because Defendants are authorized to do business, and currently do business, in this state and throughout this district.

26. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, because Kia is a resident of this judicial district, is headquartered in this judicial district, engages in substantial business throughout this district, and because many of the acts complained of herein emanated from or took place within this district.

## FACTUAL ALLEGATIONS

27. This is a class action brought against Defendants on behalf of Plaintiffs and similarly situated current and former owners and lessees of the Class Vehicles in California, Texas, and New Jersey.

28. KMMG manufactured, and Kia distributed, sold, leased, serviced and warranted the Class Vehicles that are the subject of this action. Upon information and belief, Kia sold and leased, directly or indirectly through authorized dealers and other retail outlets, hundreds of thousands of the Vehicles nationwide, including tens of thousands of Class Vehicles in California, Texas, and New Jersey.

**Defective Soy-Based Wiring**

29. Electrical wiring is an integral part of today's vehicles, because these

vehicles contain important electrical components and systems that depend on wiring to function. These include important *safety* components (*e.g*., air bags). Until recently, automotive wiring consisted of a conducting material (*i.e.,* copper or other metal conductors) coated or covered with plastic. This plastic was petroleum-based and did not attract rodents.

30. In the past few years, several vehicle manufacturers, including Defendants, began replacing the insulation covering their vehicles' wiring with soy-based insulators instead of the petroleum-based plastic ones. Defendants also began using soy-based materials to construct certain other engine-related components. These soy-based insulated wires and engine-related components were intended to be biodegradable and therefore more "environmentally friendly" than traditional petroleum-based plastics.

31. The electrical wiring in an automobile must remain intact so that the circuitry related thereto can connect and properly function. Wiring that is chewed and does not remain intact results in electrical circuits not being closed or completed. This can cause arcing or other electrical malfunctions. In either case, the result is that the electrical components, which the wiring is connected to, fail to operate.

32. The use of soy-based insulated wiring (and soy-based, engine-related components) is problematic because the soy-based materials attract rodents and other animals which destroy the soy-based wiring and engine components. These animals, having been attracted by this material, literally chew through the wiring and engine-related components. *See* http://www.synlube.com/IncredibleEdibleCar1.htm.

33. Examples of soy-based wiring and engine-related components that are prone to repeated destruction by the rodents include hood insulation; wiring assembly for the battery, battery harness, wiring harness, engine harness, filter assembly for the engine, wiring assembly, fluid hoses, and battery shims.

34.   The soy-based wiring and engine-related components, therefore, fail to function properly during normal use and are defective in, at least, design, material, and/or workmanship because electrical circuits and other cables and the soy-based, engine-related components fail to operate as intended once the soy-based material is chewed.  As discussed in more detail below, this is exactly what happened to Plaintiffs multiple times when the soy-based insulated wiring and engine-related components of their Class Vehicles were gnawed and destroyed, disabling the safe and normal operation of their Class Vehicles.

### **Defendants' Knowledge of the Defective Wiring**

35.   Defendants both know about the Defect and knew about the Defect before Campbell leased her 2014 Kia Optima, Hibler purchased her 2017 Kia Sorrento, and Leppert leased his 2013 Kia Soul and 2016 Kia Forte.  For example, a television newscast in August 2013 by WCBO 5 Cleveland, reported on the fate of car owners across the country whose vehicles equipped with soy-based insulated wiring were being chewed by animals.  As that television news report explained: "Mechanic Marc Dueubber said many automakers have moved to biodegradable, soy-based wiring insulation in the past 10 years.  It won't last forever in landfills, like older plastic wiring. It's great for the environment, but even better for hungry mice and squirrels." http://www.newsnet5.com/money/consumer/dont-waste-your-money/biodegradable-soy-based-wiring-insulation-in-some-cars-appealing-to-rodents-causing-trouble.

36.   According to another report from November 2013, at least one manufacturer is making a special tape that is supposedly mouse-repellant but is not fixing the source of the problem.  *See* http://www.wptv.com/money/consumer/mechanics-say-soy-in-car-wiring-attracts-munching-mice-so-toyota-created-a-solution.

37.   An online search reveals numerous complaints by owners of Class

Vehicles across the country who have had the same problem as Plaintiffs: the soy-based wiring and engine-related components have been chewed by rodents, and Kia has refused to cover the repair under warranty.

38.   For example, on www.carcomplaints.com, one consumer stated: "When I purchased the KIA Soul in June 2013 I was not told that the plastic coating on the wiring is soy based - very attractive to squirrels, rodents and cats. On August 27th while dirving [sic] to work the malfunction light came on - the car had to be carried to the dealership for repairs. Only then did I receive the call that this 'not an uncommon problem' is not covered under the warranty. Plus I had to take immediate steps to prevent further damage from squirrels, rodents and/or cats as the car could burst into flames or I could be in an accident causing bodily injury or death.  At no time was this vital information shared with me prior to purchasing the car nor is it in the KIA owners [sic] manual. The only solution given is to put moth balls in and around [sic] the engine - we had to put the moth balls in socks so as not to endanger a child's life. Now I cannot allow air from outside the car to come into the car due the mothball odor - and if anyone with asthma or copd [sic] gets too near the car the smell of moth balls make it very difficult for them to breathe. That happy hamster in the commercial is so happy because it knows it has its next snack.  KIA makes and sells these cars knowing if they told the consumer prior to an incident happening such as prior to purchase of the car - the cars would not be selling! I as a consumer have been wronged by the lack of the dealership sharing such vital information. The Consumer Protection Agency should not allow a car sold in the USA to have such a potentially life threatening problem! And our Highway Safety Commission needs to investigate this fully and takes steps to stop cars with soy based wire coating to be     sold!"     -     efox,     Pensacola,     FL,     USA http://www.carcomplaints.com/Kia/Soul/2013/electrical/plastic coating_wiring_is_soy_based-.shtml.

39.     A similar complaint was reported on NHTSA's website on August 29, 2013: "TL* The contact owns a 2013 Kia soul. The contact stated that while driving approximately 40 mph, the check warning light illuminated. The vehicle was taken to a dealer for a diagnosis. The technician stated that the wiring coding was soy based and that animals were eating the wires. As a result, the wiring harness and the emission wiring needed to be replaced. The contact mentioned the same soy based coding wiring was used to remedy the defect and he was concerned that there would be a recurrence in the failure. The manufacturer was notified of the failure. The vehicle was repaired but the failure recurred. The approximate failure and current mileage was 1,000." http://www-odi.nhtsa.dot.gov/owners/SearchResultsByUrlCode.action?referenceSearch.requestId=69306&referenceSearch.urlCode=BYFUG329WHM018C.

40.     Another Kia complaint dated January 8, 2016 was reported on http://ctwatchdog.com/finance/rodents-damage-cars-by-chewing-electrical-connections-tips-on-how-to-avoid-costly-repairs:

"We have a **New Kia Sportage** with less than 7,000 miles on it and it would not start one day. Tried to start but all that happened was all the dash lights came on. Did not start, called the wrecker, had towed to the dealership where we bought the car, they called back stating that the wiring harnesses had been chewed up — - cost over $5000— which the bumper to bumper warranty did not cover of course.  The manufactures need to be held accountable for the wiring made of a **soy base**, which rodents absolutely LOVE TO CHEW ON. Also the dealerships should be held accountable for their worthless BUMPER TO BUMPER coverage which is absolutely worthless…."

41.     Another Kia customer posted the following on February 26, 2015: "I have a 2012 Kia Sorrento.  Two weeks ago the engine light came on and the car ran really rough.  Took it to the dealer, it was squirrels who chewed the insulation on the wiring.   They fixed it and today the same problem…"

http://gotaclassaction.com/investigation-of-volkswagen-porsche-audi-over-use-of-soy-based-wiring-susceptible-to-destruction-by-vermin.[1]

42.     Thus, Defendants had knowledge of the problems related to the soy-based wiring before bringing the Vehicles to market or, at a minimum, had knowledge shortly after bringing the Vehicles to market as a result of the receipt of numerous complaints.

43.     So many people have been looking for solutions that there are various technical service bulletins from, *inter alia*, Ford, Honda, and Toyota, instructing their technicians how to remedy chewed wiring harnesses. http://www.consumerreports.org/cro/news/2014/04/how-to-protect-your-car-from-rodents/index.htm.

**Plaintiff Campbell's Experience**

44.     In or around January 2014, Campbell leased a 2014 Kia Optima from the Kia dealership in Valencia, California, Keys Kia of Valencia.  This was the second Kia vehicle that Plaintiff Campbell had leased.  The first one, like her other cars, was leased, but with the intent to purchase the vehicle at the end of the lease. Plaintiff Campbell purchased at least her last three vehicles in this same manner – lease followed by purchase of the vehicle at the end of the lease. This was also Campbell's plan for the 2014 Optima.

45.     Campbell's husband drove the 2014 Kia Optima on I5 to and from work each day.  Campbell's husband realized there was a problem when the Kia suddenly lost power on the I5 and decelerated to below 20 miles per hour. This was a serious safety hazard, and Campbell attempted to take the vehicle (on surface roads and at low speed) to Keys Kia.   Upon arriving at Keys Kia, and realizing it was permanently closed, Campbell then drove the car (on surface roads and at low speed) to the Galpin Kia dealership in North Hills, California.

---

[1]     *See also* http://www.nbclosangeles.com/news/local/critters-could-be-causing-you-car-problems-370726971.html ("'Wow, I can't see anything, my headlights aren't coming on, and the windows didn't work either,' she says.  Her wiring harness [in her Kia] had been chewed to pieces by rodents…").

46.   Galpin inspected the vehicle and diagnosed the problems as the main wiring harness, which had completely severed, due to being chewed by an animal. Campbell asked for the repair to be covered under her warranty and was informed that this was not covered under warranty.

47.   Campbell "escalated" the issue to KMA, and asked for the cost to be covered under warranty, but after several weeks, Campbell was informed that Kia would not cover the defect.  In the meantime, and during the entirety of December, 2016, the Vehicle sat at Galpin Kia, as it was unsafe to drive.

48.   Following Kia's confirmation that it would not pay for the repair, which the Kia dealership estimated at $1,500, Campbell contacted her insurance company and was told that it would not pay for the repair, but that instead the mechanic should splice the wiring, which cost approximately $300.  Campbell paid for this repair.

49.   After the breakdown due to the Defect, communications with Kia customer service and the dealer, and over $300 in out-of-pocket repairs when Kia refused to cover the damages related to the Defect, and because Campbell did not believe the Vehicle provided safe and reliable transportation, she decided to turn the Vehicle in when her lease ended in February 2017.

50.   Campbell had expected, as was her practice, to purchase the Kia at the end of the lease period, but due to the Defect and worry that additional wires would be chewed by rodents, putting her family in danger when riding in the Kia, she did not do so.  Campbell received a bill for excess mileage of more than $8,000, which she would not have received if the Vehicle did not have the Defect. Campbell called Kia to request a reduction due to the Defect, but the request was denied.

**Plaintiff Hibler's Experience**

51.   Plaintiff Hibler's 2017 Kia Sorrento has been damaged twice because of the Defect since she purchased the Vehicle in June of 2016 from Mike Shaw

Kia, a Kia dealership located in Corpus Christi, Texas.  Each time rodents were attracted to and chewed the defective soy-based materials in her Vehicle.

52.     The first incident occurred on or around January 14, 2017.  Plaintiff Hibler started her Vehicle and noticed that all of the warning lights were lit.  In response, she called Mike Shaw Kia and was told to carefully drive her Vehicle to the dealership.  Plaintiff Hibler drove her Vehicle to Mike Shaw Kia and noticed during the trip that the steering seemed more difficult to operate than normal.  Representatives at Mike Shaw Kia told Plaintiff Hibler that her Vehicle's wiring had been chewed and needed to be replaced.  This repair cost $2,409.18.  Plaintiff sought warranty coverage for this defect, but Kia denied her claim for coverage.  Plaintiff Hibler paid $995, and her auto insurer paid $1,414.18 for the repair.

53.     The second incident occurred on or around April 29, 2017.  Plaintiff Hibler started her Vehicle and, once again, noticed that all of the warning lights were lit.  Because she had recently experienced this same occurrence, Plaintiff Hibler drove her Vehicle to Mike Shaw Kia.  During this trip, the Vehicle's steering seemed more difficult to operate than normal.  Just like the incident four months earlier, an employee at Mike Shaw Kia told Plaintiff Hibler that her Vehicle's wiring had been chewed and needed to be replaced.  This second repair cost $2,660.77.  Once again, Kia denied Hibler's request for warranty coverage.  Plaintiff Hibler paid $1,241.49, and her auto insurer paid $1,419.28.

54.     During the repair following the second incident, Plaintiff Hibler requested that the mechanic install rodent repellant tape on the new wire harness.  The mechanic installed the tape at a cost of $300.

**Plaintiff Leppert's Experience**

55.     Plaintiff Leppert has leased two Kia vehicles, each of which has been damaged because of the Defect.  The first Vehicle, a 2013 Kia Soul leased from Jim Curly Kia in Lakewood, New Jersey, was chewed by a rodent in August 2014.

Plaintiff Leppert became aware of a problem with the 2013 Kia Soul because multiple warning lights were lit on the Vehicle's dashboard.  He drove the Vehicle to the Kia dealership and was informed that rodents had chewed certain components under the hood. Kia refused to cover the expense under the Vehicle's warranty, so Plaintiff Leppert paid $294.25.

56.     In June 2017, Plaintiff Leppert's 2016 Kia Forte – leased from Toms River Kia in Toms River, New Jersey – was chewed by a rodent.  Plaintiff Leppert became aware of a problem with his 2016 Kia Forte because the check engine warning and the tire pressure warning lights were illuminated on the dashboard. Once again, Plaintiff Leppert drove the Vehicle to the Kia dealership.  The Kia dealership technician informed him that rodents had chewed certain components under the hood and that this was a common issue, as he had seen many instances of rodents chewing soy-based components on Kia vehicles recently. Plaintiff Leppert requested warranty coverage for the repair of the Defect, but Kia again refused to cover the repair under the Vehicle's warranty.  Thus, Plaintiff Leppert paid $128.25.

**Kia Refuses to Cover the Defect Under Its Warranty**

57.     Kia has an obligation under its warranty to "provide for the repair" of the Soy-Based Materials Defect at no cost to the customer. (Ex. B at p. 4).  Kia boasts about the effectiveness of the coverage provided by its warranty on the "Welcome" page of its Manual: "You'll also be pleased by how strongly we stand behind every Kia vehicle.  The New vehicle 60 month/60,000 Miles Limited Warranty described in this manual is one of the finest available."  (Ex. B at p. 2).

58.     Rather than abide by the terms of its express warranty and live up to its express assertion that its warranty is "one of the finest available," Kia steadfastly refuses to cover the Soy-Based Materials Defect under it warranty.  By doing so, Kia effectively transforms this Defect into another source of income to generate profits.  This is blatantly apparent by looking at Plaintiffs, who, despite

their requests for warranty coverage, have been charged for the "repairs" related to the Defect, as set forth herein.

59.     All Class Vehicles are equipped with components that contain the Soy-Based Materials Defect.  These components are defective in at least design, material, and/or workmanship under normal use because the soy-based materials attract rodents and animals that chew the components, rendering the damaged components unfit to perform their intended function.

60.     As demonstrated above, Kia does not cover the Soy-Based Materials Defect under its warranty, despite the unambiguous statement that the warranty provides for the repair/replacement of factory installed parts if they "fail to function properly during normal use."  Kia has breached, and continues to breach, its warranty by refusing to cover the Soy-Based Materials Defect.

**Kia's Warranty Fails of Its Essential Purpose**

61.     As demonstrated above, Kia does not actually "repair" the Soy-Based Materials Defect when a Class member has a defective part repaired.  Instead of actually replacing the defective parts with non-defective parts, Kia simply installs equally defective parts, resulting in repeat failures.

62.     Even if Kia covered the Defect repairs under the warranty (which it does not), the warranty would fail its essential purpose because Kia simply replaces defective parts with equally defective parts.  Accordingly, Plaintiffs and the members of the Classes are entitled to alternative remedies (other than repair and replacement of the defective part with an equally defective part) including, but not limited to: (1) requiring Defendants to develop and implement a true repair to address the Defect; (2) permitting Plaintiffs and the Classes to return the Vehicles to Kia at no cost or loss to each member of the Classes; and (3) requiring Kia to replace the defective parts for the lifetime of each Vehicle.

63.     Through Kia, Plaintiffs and each member of the Classes are provided with a 60-month/60,000-mile warranty, pursuant to which Kia is obligated to

repair and/or replace defective parts at no charge (inclusive of labor).  During that warranty period and under the terms of the express warranty, Kia was (and is) obligated to repair the Soy-Based Materials Defect in the Class Vehicles under the terms of the express warranty, but has failed to do so.

64.    As a result of Kia's conduct, Plaintiffs and members of the Classes have suffered injury in fact and have otherwise suffered damages and been harmed and will continue to be harmed in the future unless Kia is held accountable through this litigation.

65.    As a result of the Defect, the Class Vehicles' value (including, without limitation, their value at the time of purchase, as well as their re-sale value) has been substantially and permanently diminished, as Plaintiffs and members of the Classes have not received the value for which they bargained when they purchased or leased the Class Vehicles.  Had Defendants disclosed the Defect to Plaintiffs and the members of the Classes prior to purchase or lease, they would not have purchased or leased the Vehicles, or would have paid substantially less for them.

66.    Plaintiffs seeks injunctive relief, actual damages, disgorgement of profits, statutory damages, attorneys' fees, costs, and all other relief available to the Classes as defined herein.

## CLASS ACTION ALLEGATIONS

67.    Plaintiffs bring this action on behalf of themselves and others similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

68.    Plaintiff Campbell asserts her claims on behalf of the following class of California residents (the "California Class"):

> All individuals or entities in California who leased or purchased, not for resale, one or more Class Vehicles.[2]

---

[2] Plaintiffs reserve the right to modify the California Class definition as this litigation proceeds.

69.     Plaintiff Hibler asserts her claims on behalf of the following class of Texas residents (the "Texas Class"):

All individuals or entities in Texas who leased or purchased, not for resale, one or more Class Vehicles.[3]

70.     Plaintiff Leppert asserts his claims on behalf of the following class of New Jersey residents (the "New Jersey Class"):

All individuals or entities in New Jersey who leased or purchased, not for resale, one or more Class Vehicles.[4]

71.     The California Class, Texas Class, and New Jersey Class are collectively referred to as the "Classes."

72.     Specifically excluded from the Classes are: (a) Defendants, including any entity in which Defendants have a controlling interest, and their representatives, officers, directors, employees, assigns and successors; (b) any person who has suffered a personal injury or is alleged to have suffered personal injury as a result of the Defect; (c) any person or entity who has settled or released these same claims against Defendants as evidenced by a written release; and (d) the Judge to whom this case is assigned.

73.     Rule 23(b)(2): By uniformly and repeatedly denying requests by Plaintiffs and the members of the Classes for warranty coverage for the Soy-Based Materials Defect, Kia has acted or refused to act on grounds that apply generally to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the Classes as a whole.

74.     Numerosity/Impracticability of Joinder: The members of the Classes are so numerous that joinder of all members would be impracticable. The proposed Classes include, at a minimum, tens of thousands of members. The

---

[3] Plaintiffs reserve the right to modify the Texas Class definition as this litigation proceeds.
[4] Plaintiffs reserve the right to modify the New Jersey Class definition as this litigation proceeds.

precise number of Class members can be ascertained by reviewing documents in Kia's possession, custody and control or otherwise obtained through reasonable means.

75.    <u>Commonality and Predominance</u>:  There are common questions of law or fact which predominate over any questions affecting only individual members of the Classes.  These common legal or factual questions include, but are not limited, to the following:

a.    whether the Vehicles contain the Defect;

b.    whether Kia has refused, and continues to refuse, to cover the Defect under the warranty;

c.    whether Defendants engaged in a pattern of fraudulent, deceptive, and misleading conduct;

d.    whether Defendants' acts and omissions violated California consumer fraud statutes;

e.    whether Defendants' acts and omissions violated Texas consumer fraud statutes;

f.    whether Defendants' acts and omissions violated New Jersey consumer fraud statutes;

g.    whether Defendants failed to disclose material facts to Plaintiffs and the members of the Classes regarding the Defect in the Class Vehicles;

h.    whether Defendants' concealment of material facts regarding the Defect in the Class Vehicles was intended to deceive the public;

i.    whether Kia breached its express or implied warranties;

j.    whether, as a result of Defendants' misconduct, Plaintiffs and the members of the Classes are entitled to declaratory and equitable relief and, if so, the nature of such relief; and

k.    whether Plaintiffs and members of the Classes have sustained ascertainable loss and damages as a result of Defendants' acts and omissions, and the proper measure thereof.

76.    <u>Typicality</u>:  Plaintiffs' claims are typical of the claims of the members of the Classes they seek to represent.  Plaintiffs and the members of the Classes have been injured by the same Defect and the same wrongful practices in which

Defendants have engaged.  Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the members of the Classes and are based on the same legal theories.

77.  <u>Adequacy</u>:  Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Classes, and have retained attorneys who are experienced and qualified in prosecuting automotive class actions.  Neither Plaintiffs nor their attorneys have any interests which are contrary to or conflicting with the Classes.

78.  <u>Superiority</u>:  A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Classes is economically unfeasible and procedurally impracticable.  While the aggregate damages sustained by the Classes are likely in the millions of dollars, the individual damages incurred by each member of the Classes resulting from Defendants' wrongful conduct are too small to warrant the expense of individual suits.  The likelihood of individual members of the Classes prosecuting their own separate claims is remote, and, even if every member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.  Individual members of the Classes do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and to the court system because of multiple trials of the same factual and legal issues.  Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.  In addition, Defendants have acted or refused to act on grounds generally applicable to the Classes and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Classes as a whole is appropriate.

79.     In the alternative, Plaintiffs seek certification pursuant to Rule 23(c)(4) on the issues of: (a) whether the Soy-Based Materials Defect should be covered by Kia's warranty; (b) whether Kia breached its uniform warranty contracts with Plaintiffs and the Classes; and (c) whether Kia engaged in deceptive, confusing or misleading practices in connection with the sale and warranting of the Vehicles.

## COUNT I

### DECLARATORY RELIEF UNDER THE DECLARATORY JUDGMENT ACT

### (On Behalf of the Classes)

80.     Plaintiffs hereby incorporate the allegations set forth above as if fully set forth herein.

81.     Plaintiffs bring this claim for relief on behalf of themselves and the members of the Classes against Kia.

82.     An actual controversy has arisen and now exists between Plaintiffs and the members of the Classes, on the one hand, and Kia, on the other hand, concerning their respective rights and duties in that Plaintiffs and the members of the Classes contend that Kia is wrongfully, uniformly, and repeatedly denying coverage for the Soy-Based Materials Defect under its warranty.

83.     A judicial declaration is necessary and appropriate at this time, under the circumstances presented, in order that Plaintiffs, the members of the Classes, and Kia may ascertain their respective rights and duties with respect to Kia's obligations under its warranty related to the Defect.

## COUNT II

### VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT

### (On Behalf of the California Class)

84.     Plaintiff Campbell hereby incorporates the allegations set forth above as if fully set forth herein.

85. Plaintiff Campbell brings this claim on behalf of herself and the members of the California Class against Defendants.

86. Defendants are "persons" within the meaning of the CLRA.

87. Plaintiff Campbell and the members of the California Class are "consumers" and the Class Vehicles constitute "goods" for the purposes of the CLRA.

88. Defendants engaged in conduct that violates the CLRA in the following ways:

a. Defendants violated Cal. Civ. Code § 1770(5) by falsely representing goods as having characteristics, uses, and benefits that they do not have, including, *inter alia*, that their Class Vehicles had no known defects at the time they were sold or leased and had proper functioning wiring and engine-related components and that their Class Vehicles have a comprehensive warranty to repair any defects, which is not the case;

b. Defendants violated Cal. Civ. Code § 1770(7) by representing the Vehicles had no known defects at the time that they were sold or leased and had proper functioning wiring and engine-related components, while knowing the Vehicles were of a different standard or quality;

c. Defendants violated Cal. Civ. Code § 1770(9) by advertising the Vehicles as defect-free and protected by a comprehensive warranty to repair any defects, although Defendants intended to sell them in a state other than advertised (*i.e.*, containing the defective soy-based wiring);

d. Defendants violated Cal. Civ. Code § 1770(14) by representing that purchasing or leasing the Vehicles confers rights and remedies in a comprehensive warranty, namely that the warranty covers any

defects, which it does not; and

e.      Defendants violated Cal. Civ. Code § 1770(16) by representing that the Class Vehicles were supplied defect-free in accordance with Defendants' form advertising and representations, although they were not supplied as such.

89.     Defendants intentionally and knowingly misled Plaintiff Campbell and the members of the California Class, misrepresenting the Class Vehicles as defect-free and covered by a comprehensive warranty, and failing to disclose the fact that they are not.

90.     Such conduct was intended to result in the sale or lease of the Class Vehicles, and it was likely to deceive, and did deceive, reasonable consumers.

91.     The information misrepresented and/or omitted would be material to a reasonable consumer in deciding to purchase or lease a Vehicle and in considering how much to pay for a Vehicle.

92.     Plaintiff Campbell provided the required 30-day notice to Kia, on March 27, 2017, before filing the Complaint pursuant to Cal. Civ. Code § 1782(d). Following receipt of the notice, Kia refused to provide the requested remedies to Plaintiff Campbell and the California Class.

93.     In accordance with Cal Civ. Code § 1780(a), Plaintiff Campbell and the members of the California Class seek actual damages, an order enjoining Defendants' conduct, and punitive damages. Pursuant to Cal Civ. Code § 1780(e), Plaintiff Campbell and the members of the California Class also seek costs and attorney's fees.

## COUNT III

### VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW

### (On Behalf of the California Class)

94.     Plaintiff Campbell hereby incorporates the allegations set forth above

as if fully set forth herein.

95.   Plaintiff Campbell brings this claim on behalf of herself and the members of the California Class against Defendants.

96.   The UCL prohibits unfair competition, which § 17200 defines as an "unlawful, unfair, or fraudulent business act or practice."

97.   Defendants have violated the unlawful prong of § 17200 by their violations of the CLRA, as set forth above.

98.   Defendants have violated the unfair prong of § 17200 through the acts described herein, including, *inter alia*, by manufacturing and selling or leasing the Class Vehicles with the Defect, failing to adequately disclose and the remedy the Defect, denying warranty coverage for the Defect, mispresenting the Vehicles as defect-free, and continuing to use defective materials when making so-called repairs.

99.   Defendants have additionally violated the fraudulent prong of § 17200 insofar as the misrepresentations and omissions that the Class Vehicles are defect-free and protected under a comprehensive warranty were likely to deceive a reasonable consumer, and the information would be material to a reasonable consumer.

100.   As a direct and proximate result of Defendants' deceptive conduct, Plaintiff Campbell and the members of the California Class have been damaged.

101.   Defendants continue to engage in this pattern of deceptive conduct, and, thus, Plaintiff Campbell and the members of the California Class seek to enjoin Defendants from continuing their unfair, unlawful, and fraudulent practices.

## COUNT IV

### BREACH OF EXPRESS WARRANTY

#### (On Behalf of the California Class)

102.   Plaintiff Campbell hereby incorporates the allegations set forth above

as if fully set forth herein.

103.   Campbell brings this claim on behalf of herself and the members of the California Class against Kia.

104.   As an express warrantor, manufacturer and merchant, Kia had certain obligations pursuant to its warranty to repair and replace defects.

105.   When Plaintiff Campbell and the members of the California Class purchased and/or leased the Class Vehicles with the Soy-Based Materials Defect, Kia expressly warranted under its warranty that it would properly repair/replace factory-installed parts at no charge to the consumer if they "fail to function properly during normal use," for 60 months or 60,000 miles, whichever comes first.

106.   The Soy-Based Materials Defect at issue in this litigation was present at the time of sale and/or lease to Plaintiff Campbell and members of the California Class.

107.   Kia breached the warranty (and continues to breach the warranty) because it wrongfully, uniformly, and repeatedly refuses to cover the Soy-Based Materials Defect under the warranty, forcing Plaintiff Campbell and the members of the California Class to cover the costly installation of replacement parts themselves.

108.   Even if Kia covered these repairs under the warranty, the warranty would fail of its essential purpose because Kia merely replaces defective parts with equally defective parts containing the same Soy-Based Materials Defect.

109.   Plaintiff Campbell used her Class Vehicle in a manner consistent with its intended use and performed each and every duty required under the terms of the warranty including presentment, except as may have been excused or prevented by the conduct of Kia or by operation of law in light of Kia's unconscionable conduct described throughout this Complaint.

110.   Kia received timely notice regarding the problems at issue in this

litigation and, notwithstanding such notice, has failed and refused to offer an effective remedy.

111.   In addition, Kia received, on information and belief, numerous complaints, notice of the Defect, and requests for warranty coverage from other members of the California Class.

112.   In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Kia to disclaim or otherwise limit its express warranties in a manner that would exclude or limit coverage for the Defect that was present as of the time of sale or lease, which Kia knew about prior to offering the Vehicles for sale or lease, and which Kia concealed, did not disclose, and did not remedy prior to sale or lease (or afterward), is unconscionable and Kia should be estopped from pursuing such defenses.

113.   Further, any such effort by Kia to disclaim or otherwise limit liability for the Defect is null and void because Kia and its authorized agents, the dealers, have wrongfully, uniformly, and repeatedly refused and failed to properly repair or replace the parts impacted by the Soy-Based Material Defect.

114.   As such, Kia should be estopped from disclaiming liability for its actions.

115.   Accordingly, Plaintiff Campbell and the members of the California Class suffered damages caused by Kia's breach of the warranty and are entitled to recover damages as set forth herein.

## COUNT V

## BREACH OF IMPLIED WARRANTY

### (On Behalf of the California Class)

116.   Plaintiff Campbell hereby incorporates the allegations set forth above as if fully set forth herein.

117.   Campbell brings this claim on behalf of herself and the members of the California Class against Kia.

118.   Kia is and was, at all relevant times, a merchant with respect to the Class Vehicles.

119.   A warranty that the Class Vehicles were in merchantable quality and condition is implied by law pursuant to California Commercial Code § 2314.

120.   Kia impliedly warranted that the wiring and engine-related components in the Class Vehicles were of good and merchantable condition and quality – fit and safe for their ordinary intended use, namely, providing reliable transportation.

121.   The soy-based wiring and engine related components were defective at the time they left the possession of Kia, as set forth above.  Kia knew of this Defect at the time these transactions occurred.  Thus, the Class Vehicles with the Defect, when sold or leased and at all times thereafter, were not in merchantable condition or quality and are not fit for their ordinary intended purpose.

122.   By virtue of the conduct described herein and throughout this Complaint, Kia breached the implied warranty of merchantability.

123.   Plaintiff Campbell and the members of the California Class have been damaged as a direct and proximate result of Kia's breach of the implied warranty.

124.   Plaintiff Campbell has used the Class Vehicle in a manner consistent with the intended use and performed each and every duty required under the terms of the warranty, except as may have been excused or prevented by the conduct of Kia or by operation of law in light of Kia's conduct.

125.   Kia received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, has failed and refused to offer an effective remedy.

126.   In addition, Kia has received, on information and belief, hundreds of complaints and other notices from customers and others advising it of the Defect.

127.   Plaintiff Campbell has had sufficient dealings with either Kia or its authorized dealers to establish privity of contract.  The dealers were not intended

to be the ultimate consumers of the Vehicles and have no rights under the warranty agreements provided with the Vehicles. In addition, the Vehicles were sold or leased directly to Plaintiff Campbell and the members of the California Class by Kia pursuant to dealer financing and floor plan financing arrangements, so that title directly passed from Kia to Plaintiff Campbell and the California Class members, thus establishing privity. Notwithstanding this, privity is not required in this case because Plaintiff Campbell and the California Class members are intended third-party beneficiaries of contracts between Kia and its dealers; specifically, they are intended beneficiaries of Kia's implied warranties. The implied warranty agreements were designed for and intended to benefit the ultimate consumers only.

128. As a direct and proximate result of Kia's breach of its implied warranty, Plaintiff Campbell and the members of the California Class were caused to suffer economic damage, including loss attributable to the diminished value of their Vehicles, loss of use, as well as the monies spent and to be spent to repair and/or replace their Vehicles.

## COUNT VI

## VIOLATION OF TEXAS DECEPTIVE TRADE PRACTICES ACT[5]
### (On Behalf of the Texas Class)

129. Plaintiff Hibler hereby incorporates the allegations set forth above as if fully set forth herein.

130. Kia's business acts and practices alleged herein, namely Kia's breach of express and implied warranties, violate the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.41, *et seq.* ("TDTPA").

131. At all relevant times, Plaintiff Hibler and all members of the Texas

---

[5] Plaintiff Hibler issued her written notice of intent to seek damages to Defendants pursuant to Tex. Bus. & Com. Code Ann. § 17.505(a) on June 30, 2017. As such, Plaintiff Hibler will amend this Complaint as appropriate to add a claim for damages following the expiration of the 60 day notice period.

Class were "consumers" within the meaning of the TDTPA.

132. Kia's actions and practices occurred in the conduct of "trade or commerce" within the meaning of the TDTPA.

133. Kia breached express and implied warranties to Plaintiff Hibler and the Texas Class, as set forth herein, in violation of Tex. Bus. & Com. Code § 17.50(a)(2).

134. Kia's actions and practices also constitute an unconscionable action or course of conduct, in violation of Tex. Bus. & Com. Code § 17.50(a)(3).

135. Kia's common actions as described throughout this Complaint, including Kia's failure to honor the express and implied warranties at issue, impact the public interest because Plaintiff Hibler and members of the Texas Class were injured (and will continue to be injured in the future) in exactly the same way as thousands of others purchasing and/or leasing the Class Vehicles.

136. Further, had Plaintiff Hibler and other members of the Texas Class known of the Defect, they would not have purchased or leased the Vehicles, or would have paid less for them.

137. The foregoing acts, omissions and practices proximately caused Plaintiff Hibler and other members of the Texas Class to suffer actual damages in the form of, *inter alia*, out-of-pocket costs and diminution in value of the Vehicles.

138. Kia's conduct was knowing, intentional, and malicious, and demonstrated a complete lack of care and recklessness and was in conscious disregard for the rights of Plaintiff Hibler and other members of the Texas Class.

139. As a result of this wrongful conduct, Plaintiff Hibler and other members of the Texas Class have been damaged. However, Plaintiff Hibler does not currently seek to recover damages under the TDTPA in this initial Complaint and instead seeks only injunctive relief requiring Kia to cover the Defect under the applicable warranties. After mailing appropriate notice and demand in

accordance with Tex. Bus. & Com. Code Ann. § 17.505, Hibler will subsequently seek to amend this Complaint to also include requests for compensatory and punitive damages.

## COUNT VII

## BREACH OF EXPRESS WARRANTY

### (On Behalf of the Texas Class)

140.   Plaintiff Hibler hereby incorporates the allegations set forth above as if fully set forth herein.

141.   Plaintiff Hibler brings this claim on behalf of herself and the members of the Texas Class against Kia.

142.   As an express warrantor, manufacturer and merchant, Kia had certain obligations pursuant to its warranty to repair and replace defects.

143.   When Plaintiff Hibler and the members of the Texas Class purchased and/or leased the Class Vehicles with the Soy-Based Materials Defect, Kia expressly warranted under its warranty that it would properly repair/replace factory-installed parts at no charge to the consumer if they "fail to function properly during normal use," for 60 months or 60,000 miles, whichever comes first.

144.   The Soy-Based Materials Defect at issue in this litigation was present at the time of sale and/or lease to Plaintiff Hibler and members of the Texas Class.

145.   Kia breached the warranty (and continues to breach the warranty) because it wrongfully, uniformly, and repeatedly refuses to cover the Soy-Based Materials Defect under the warranty, forcing Plaintiff Hibler and the members of the Texas Class to cover the costly installation of replacement parts themselves.

146.   Even if Kia covered these repairs under the warranty, the warranty would fail of its essential purpose because Kia merely replaces defective parts with equally defective parts containing the same Soy-Based Materials Defect.

147.   Plaintiff Hibler and the members of the Texas Class used their Class

Vehicles in a manner consistent with their intended use and performed each and every duty required under the terms of the warranty, including presentment, except as may have been excused or prevented by the conduct of Kia or by operation of law in light of Kia's unconscionable conduct described throughout this Complaint.

148.   Kia received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, has failed and refused to offer an effective remedy.

149.   In addition, Kia received, on information and belief, numerous complaints, notice of the Defect, and requests for warranty coverage from other members of the Texas Class.

150.   In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Kia to disclaim or otherwise limit its express warranties in a manner that would exclude or limit coverage for the Defect that was present as of the time of sale or lease, which Kia knew about prior to offering the Vehicles for sale or lease, and which Kia concealed, did not disclose, and did not remedy prior to sale or lease (or afterward), is unconscionable, and Kia should be estopped from pursuing such defenses.

151.   Further, any such effort by Kia to disclaim or otherwise limit liability for the Defect is null and void because Kia and its authorized agents, the dealers, have wrongfully, uniformly, and repeatedly refused and failed to properly repair or replace the parts impacted by the Soy-Based Material Defect.

152.   As such, Kia should be estopped from disclaiming liability for its actions.

153.   Accordingly, Plaintiff Hibler and the Texas Class members suffered damages caused by Kia's breach of the warranty and are entitled to recover damages as set forth herein.

## COUNT VIII

### BREACH OF IMPLIED WARRANTY

### (On Behalf of the Texas Class)

154.   Plaintiff Hibler hereby incorporates the allegations set forth above as if fully set forth herein.

155.   Plaintiff Hibler brings this claim on behalf of herself and the members of the Texas Class against Kia.

156.   Kia is and was, at all relevant times, a merchant with respect to the Class Vehicles.

157.   A warranty that the Class Vehicles were in merchantable quality and condition is implied by law pursuant to Tex. Bus. & Com. Code Ann. § 2.314.

158.   Kia impliedly warranted that the wiring and engine-related components in the Class Vehicles were of good and merchantable condition and quality – fit and safe for their ordinary intended use, namely, providing reliable transportation.

159.   The soy-based wiring and engine-related components were defective at the time they left the possession of Kia, as set forth above.  Kia knew of this Defect at the time these transactions occurred.  Thus, the Class Vehicles with the Defect, when sold or leased and at all times thereafter, were not in merchantable condition or quality and are not fit for their ordinary intended purpose.

160.   By virtue of the conduct described herein and throughout this Complaint, Kia breached the implied warranty of merchantability.

161.   Plaintiff Hibler and the Texas Class members have been damaged as a direct and proximate result of Kia's breach of the implied warranty.

162.   Plaintiff Hibler and the members of the Texas Class have used their Class Vehicles in a manner consistent with the intended use and performed each and every duty required under the terms of the warranty, except as may have been excused or prevented by the conduct of Kia or by operation of law in light of Kia's

conduct.

163.   Kia received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, has failed and refused to offer an effective remedy.

164.   In addition, Kia has received, on information and belief, hundreds of complaints and other notices from customers and others advising it of the Defect.

165.   Plaintiff Hibler and the members of the Texas Class have had sufficient dealings with either Kia or its authorized dealers to establish privity of contract.  The dealers were not intended to be the ultimate consumers of the Vehicles and have no rights under the warranty agreements provided with the Vehicles.  In addition, the Vehicles were sold or leased directly to Plaintiff Hibler and the Texas Class members by Kia pursuant to dealer financing and floor plan financing arrangements, so that title directly passed from Kia to Plaintiff Hibler and the Texas Class members, thus establishing privity.  Notwithstanding this, privity is not required in this case because Plaintiff Hibler and the Texas Class members are intended third-party beneficiaries of contracts between Kia and its dealers; specifically, they are intended beneficiaries of Kia's implied warranties. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

166.   As a direct and proximate result of Kia's breach of its warranty, Plaintiff Hibler and the members of the Texas Class were caused to suffer economic damage, including loss attributable to the loss of their warranty investment value, the diminished value of their Vehicles, loss of use, as well as the monies spent and to be spent to repair and/or replace their Vehicles.

## COUNT IX

### VIOLATIONS OF NEW JERSEY CONSUMER FRAUD ACT

#### (On Behalf of the New Jersey Class)

167.   Plaintiff Leppert hereby incorporates the allegations set forth above

as if fully set forth herein.

168.  Plaintiff Leppert brings this claim on behalf of himself and the members of the New Jersey Class against Defendants.

169.  Plaintiff Leppert and the members of the New Jersey Class, as well as Defendants, are "persons" with the meaning of the New Jersey Consumer Fraud Act ("CFA").

170.  Plaintiff Leppert and the New Jersey Class are "consumers" within the meaning of the CFA.

171.  At all relevant times material hereto, Defendants conducted trade and commerce in New Jersey and elsewhere within the meaning of the CFA.

172.  The CFA prohibits the "use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise…." N.J. Stat. Ann. § 56:8-2.

173.  The CFA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes.

174.  Defendants' practices violated the CFA for, *inter alia*, one or more of the following reasons:

> a. Defendants failed to disclose the material fact that their Class Vehicles had the Defect and that this Defect would not be covered by Kia's warranty;
>
> b. Defendants represented that the Vehicles had no known defects at the time they were sold or leased; had proper functioning wiring and engine-related components; and had a comprehensive warranty to repair any defect, which is not the case; and

c. Defendants falsely represented that goods or services have sponsorship, approval, characteristics, uses, and benefits that they do not have, including, *inter alia*, that its Class Vehicles had no known defects at the time they were sold or leased and had proper functioning wiring and engine-related components and that their Class Vehicles have a comprehensive warranty to repair any defects, which is not the case.

175.   Defendants, in bad faith, intentionally and knowingly misled Plaintiff Leppert and the members of the New Jersey Class, misrepresenting the Vehicles as defect-free and covered by a comprehensive warranty that was one of the finest available to consumers.

176.   Such conduct was likely to deceive, and did deceive, reasonable consumers, and the information misrepresented and/or concealed would be material to a reasonable consumer in deciding to purchase or lease a Vehicle and in considering how much to pay for a Vehicle.

177.   As a direct and proximate result of the conduct alleged herein, Plaintiff Leppert and the members of the New Jersey Class were damaged

178.   Accordingly, Plaintiff Leppert and the members of the New Jersey Class are entitled to recover such damages together with appropriate penalties, including treble damages, attorneys' fees and costs of suit.

## <u>COUNT X</u>

### BREACH OF EXPRESS WARRANTY

### (On Behalf of the New Jersey Class)

179.   Plaintiff Leppert hereby incorporates the allegations set forth above as if fully set forth herein.

180.   Plaintiff Leppert brings this claim on behalf of himself and the members of the New Jersey Class against Kia.

181.   As an express warrantor and manufacturer and merchant, Kia had

certain obligations pursuant to its warranty to repair and replace defects.

182. When Plaintiff Leppert and the members of the New Jersey Class purchased and/or leased the Class Vehicles with Soy-Based Materials Defect, Kia expressly warranted under its warranty that it would properly repair/replace factory-installed parts at no charge to the consumer if they "fail to function properly during normal use," for 60 months or 60,000 miles, whichever comes first.

183. The Soy-Based Materials Defect at issue in this litigation was present at the time of sale and/or lease to Plaintiff Leppert and members of the New Jersey Class.

184. Kia breached the warranty (and continues to breach the warranty) and the implied duty of good faith and fair dealing because it wrongfully, uniformly, and repeatedly refuses to cover the Soy-Based Materials Defect under the warranty, forcing Plaintiff Leppert and the members of the New Jersey Class to cover the costly installation of replacement parts themselves.

185. Even if Kia covered these repairs under the warranty, the warranty would fail of its essential purpose because Kia merely replaces defective parts with equally defective parts containing the same Soy-Based Materials Defect.

186. Plaintiff Leppert and the members of the New Jersey Class used their Class Vehicles in a manner consistent with their intended use and performed each and every duty required under the terms of the warranty including presentment, except as may have been excused or prevented by the conduct of Kia or by operation of law in light of Kia's unconscionable conduct described throughout this Complaint.

187. Kia received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, has failed and refused to offer an effective remedy.

188. In addition, Kia received, on information and belief, numerous

complaints, notice of the Defect, and requests for warranty coverage from other members of the New Jersey Class.

189.   In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Kia to disclaim or otherwise limit its express warranties in a manner that would exclude or limit coverage for the Defect that was present as of the time of sale or lease, which Kia knew about prior to offering the Vehicles for sale or lease, and which Kia concealed, did not disclose, and did not remedy prior to sale or lease (or afterward), is unconscionable and Kia should be estopped from pursuing such defenses.

190.   Further, any such effort by Kia to disclaim or otherwise limit liability for the Defect is null and void because Kia and its authorized agents, the dealers, have wrongfully, uniformly, and repeatedly refused and failed to properly repair or replace the parts impacted by the Soy-Based Material Defect.

191.   As such, Kia should be estopped from disclaiming liability for its actions.

192.   Accordingly, Plaintiff Leppert and the New Jersey Class members suffered damages caused by Kia's breach of the warranty and duty of good faith and fair dealing and are entitled to recover damages as set forth herein

## COUNT XI

## BREACH OF IMPLIED WARRANTY

### (On Behalf of the New Jersey Class)

193.   Plaintiff Leppert hereby incorporates the allegations set forth above as if fully set forth herein.

194.   Plaintiff Leppert brings this claim on behalf of himself and the members of the New Jersey Class against Kia.

195.   Kia is and was, at all relevant times, a merchant with respect to the Class Vehicles.

196.   A warranty that the Class Vehicles were in merchantable quality and

condition is implied by law pursuant to N.J. Stat. Ann. § 12A:2-314.

197.   Kia impliedly warranted that the wiring and engine-related components in the Class Vehicles were of good and merchantable condition and quality – fit and safe for their ordinary intended use, namely, providing reliable transportation.

198.   The soy-based wiring and engine-related components were defective at the time they left the possession of Kia, as set forth above.  Kia knew of this Defect at the time these transactions occurred.  Thus, the Class Vehicles with the Defect, when sold or leased and at all times thereafter, were not in merchantable condition or quality and are not fit for their ordinary intended purpose.

199.   By virtue of the conduct described herein and throughout this Complaint, Kia breached the implied warranty of merchantability.

200.   Plaintiff Leppert and the New Jersey Class members have been damaged as a direct and proximate result of Kia's breach of the implied warranty.

201.   Plaintiff Leppert and the members of the New Jersey Class have used their Class Vehicles in a manner consistent with the intended use and performed each and every duty required under the terms of the warranty, except as may have been excused or prevented by the conduct of Kia or by operation of law in light of Kia's conduct.

202.   Kia received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, has failed and refused to offer an effective remedy.

203.   In addition, Kia has received, on information and belief, hundreds of complaints and other notices from customers and others advising it of the Defect.

204.   Plaintiff Leppert and the members of the New Jersey Class have had sufficient dealings with either Kia or its authorized dealers to establish privity of contract.  The dealers were not intended to be the ultimate consumers of the Vehicles and have no rights under the warranty agreements provided with the

Vehicles.   In addition, the Vehicles were sold or leased directly to Plaintiff Leppert and the New Jersey Class members by Kia pursuant to dealer financing and floor plan financing arrangements, so that title directly passed from Kia to Plaintiff Leppert and the New Jersey Class members, thus establishing privity. Notwithstanding this, privity is not required in this case because Plaintiff Leppert and the New Jersey Class members are intended third-party beneficiaries of contracts between Kia and its dealers; specifically, they are intended beneficiaries of Kia's implied warranties. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

205.   As a direct and proximate result of Kia's breach of its warranty, Plaintiff Leppert and the members of the New Jersey Class were caused to suffer economic damage, including loss attributable to the loss of their warranty investment value, the diminished value of their Vehicles, loss of use, as well as the monies spent and to be spent to repair and/or replace their Vehicles.

## COUNT XII

### MAGNUSON-MOSS ACT

### (On Behalf of the Classes)

206.   Plaintiffs hereby incorporate the allegations set forth above as if fully set forth herein.

207.   Plaintiffs bring this claim on behalf of themselves and the members of the Classes against Kia.

208.   The Vehicles are "consumer products" as that term is defined by 15 U.S.C. § 2301(1).

209.   Plaintiffs and the members of the Classes are "consumers" as that term is defined by 15 U.S.C. § 2301(3).

210.   Kia is a "supplier" as that term is defined by 15 U.S.C. § 2301(4).

211.   Kia is a "warrantor" as that term is defined by 15 U.S.C. § 2301(5).

212.   Kia provided Plaintiffs and members of the Classes with "written

warranties" as that term is defined by 15 U.S.C. § 2301(6).

213.   Section 15 U.S.C. § 2310(d)(1) provides that a consumer who is damaged by the failure of the supplier, warrantor, or service contractor to comply with any obligation under this title, or a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief in any court of competent jurisdiction in any state.

214.   When Plaintiffs and the members of the Classes purchased or leased their Vehicles (either as new vehicles or as a used vehicle with remaining Warranty coverage), Kia expressly warranted that it would properly repair/replace factory-installed parts at no charge to the consumer if they "fail to function properly during normal use," for 60 months or 60,000 miles.

215.   Kia breached the express warranty because the Soy-Based Materials Defect at issue was present in the Vehicles at the time of sale, Kia knew that the Soy-Based Materials Defect was present, and Kia did not disclose or repair the Soy-Based Materials Defect prior to each sale or lease.

216.   Kia also breached the warranty (and continues to breach the warranty) because it wrongfully, uniformly, and repeatedly refuses to cover the Soy-Based Materials Defect under the warranty, forcing Plaintiffs and the members of the Classes to cover the costly installation of defective replacement parts themselves.

217.   Even if Kia covered these repairs under the warranty, the warranty would fail of its essential purpose because Kia merely replaces defective parts with equally defective parts containing the same Soy-Based Materials Defect.

218.   Plaintiffs used their Class Vehicles in a manner consistent with their intended use and performed each and every duty required under the terms of the warranty including presentment, except as may have been excused or prevented by the conduct of Kia or by operation of law in light of Kia's unconscionable conduct described throughout this Complaint.

219.   In its capacity as a supplier and/or warrantor, and by the conduct

described herein, any attempt by Kia to limit its express warranties in a manner that would exclude or limit coverage for the Soy-Based Materials Defect that was present as of the time of sale is unconscionable and any such effort to disclaim or otherwise limit liability or warranty coverage for the defects at issue is null and void.

220.   All jurisdictional prerequisites have been satisfied.

221.   Accordingly, Plaintiffs and the members of the Classes suffered damages caused by Kia's breach of the express warranties and are entitled to recover damages, including, but not limited to, diminution of value, equitable relief, and attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the members of the Classes defined herein, pray for judgment and relief as follows and as appropriate for the above causes of action:

A.   An Order certifying this case as a class action and appointing Plaintiffs and their counsel to represent the Classes;

B.   A declaration that the Soy-Based Materials Defect is covered by the terms of Kia's warranty;

C.   A temporary, preliminary, and/or permanent Order for injunctive relief: (1) requiring Defendants to immediately cease their wrongful conduct as set forth above; (2) enjoining Defendants from continuing to conceal material information and conduct business via the unlawful, unfair, and deceptive business acts and practices complained of herein; (3) requiring Defendants to undertake an informational campaign to inform members of the general public of the Defect and the wrongfulness of Defendants' practices; and (4) requiring Defendants to reimburse Plaintiffs and all members of the Class the amounts paid and other costs related to the Soy-Based

1  Materials Defect;

2  D.  Restitution and disgorgement of all amounts obtained by Defendants

3  as a result of their misconduct, together with interest thereon from

4  the date of payment, to the victims of such violations;

5  E.  All recoverable compensatory and other damages sustained by

6  Plaintiffs and the Classes;

7  F.  Actual and/or statutory damages for injuries suffered by Plaintiffs

8  and the Classes in the maximum amount permitted by applicable

9  law;

10  G.  Statutory pre-judgment and post-judgment interest on any amounts;

11  H.  Payment of reasonable attorneys' fees and costs; and

12  I.  Such other relief as the Court may deem necessary or appropriate.

13  ## JURY DEMAND

14  Plaintiffs demand a trial by jury on all issues so triable.

15  Dated: July 24, 2017          By: s/ Kolin C. Tang

16  KOLIN C. TANG (SBN 279834)
    SHEPHERD, FINKELMAN, MILLER
    & SHAH, LLP

17  11755 Wilshire Blvd, 15th Floor
    Los Angeles, CA 90025

18  Telephone: (323)510-4060
    Facsimile: (866) 300-7367

19  Email:  ktang@sfmslaw.com

20  JAMES C. SHAH (SBN 260435)
    NATALIE FINKELMAN BENNETT

21  SHEPHERD, FINKELMAN, MILLER
    & SHAH, LLP

22  35 East State Street
    Media, PA 19063

23  Telephone: (610) 891-9880
    Facsimile: (866) 300-7367

24  Email: jshah@sfmslaw.com
          nfinkelman@sfmslaw.com

25

26  JEFFREY GOLDENBERG
    TODD NAYLOR

27  GOLDENBERG SCHNEIDER, LPA
    One West Fourth Street, 18th Floor
    Cincinnati, Ohio 45202

28  Telephone:  (513) 345.8291

Class Action Complaint                                    42

Facsimile:   (513) 345.8294
Email:  jgoldenberg@gs-legal.com
          tnaylor@gs-legal.com

ROBERT W. MURPHY
1212 S.E. 2nd Avenue
Fort Lauderdale, FL  33316
Telephone:  (954) 763-8660
Facsimile: (954) 763-8607
E-Mail:  rwmurphy@lawfirmmurphy.com

*Attorneys for Plaintiffs and
the Proposed Class*